UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| IN RE SUBPOENA OF KENT COUNTY CLERK | *U.S. Dominion, Inc. et al. v. MyPillow, Inc. et al.* |
| | Civil Action No. 1:21-cv-00445 |
| | United States District Court for the District Court of Columbia |
| _____ / | |

# NON-PARTY KENT COUNTY CLERK'S BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA AND FOR SANCTIONS

## Oral Argument Requested

## INTRODUCTION

This motion arises from an action for defamation and deceptive trade practices. In 2021, U.S. Dominion Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion") sued MyPillow Inc. and its founder Michael Lindell (collectively, "Lindell") alleging that Lindell made defamatory statements that Dominion rigged the November 2020 election that damaged Dominion's business and reputation. Even though investigation after investigation into allegations of widespread election fraud in the 2020 general election has concluded that there was no widespread fraud, Lindell continues to spout various election-fraud conspiracy theories and encourages others to do the same.

On September 6, 2022, Lindell issued a third-party subpoena to Kent County Clerk Lisa Posthumus Lyons. Neither Kent County nor its Clerk is a party to the Dominion litigation. Michael Lindell does not live in Kent County, and MyPillow is not a Michigan corporation nor

does it have its headquarters in this State. No one has filed any complaints against Kent County or its Clerk alleging election fraud related to the 2020 presidential election. And in the aftermath of the 2020 election, Kent County's election results were audited and the audits did not identify any fraud. But Kent County uses Dominion voting machines and Kent County voters favored Joseph Biden over Donald Trump.

Lindell demands that the Clerk produce "forensic copies" of the electronic data storage drives from all the voting machines and servers in the County as well as every conceivable record from the 2020 general election. The information demanded by the subpoena includes the security keys and passwords to Kent County's election system as well as Dominion's proprietary voting software. Providing this information to Lindell will jeopardize the security of Kent County's election system and could jeopardize public confidence in County election results.

Despite repeated requests, Lindell has not explained why Kent County's election information is relevant to the defamation lawsuit against him, much less what efforts he has taken to minimize any burden on the Clerk as a third party or why he is seeking information from the Kent County Clerk in particular. Indeed, when Kent County's counsel reached out to request a meeting to discuss the relief requested in this motion, Lindell's counsel sent a generic response indicating that they would be back in touch in a few weeks.

Lindell and his counsel are using the privilege of issuing nationwide subpoenas to burden a county that uses a Dominion voting system without a scintilla of evidence that Kent County has any information that is both relevant and which cannot be obtained from Dominion itself. Kent County intends to use the same voting machines and data storage devices in the 2022 general election, a process that will overwrite the data that Lindell is seeking. Purchasing new machines just weeks before the general election would cost Kent County taxpayers millions of dollars,

assuming it is even possible to purchase, install and prepare the machines in time for November 8, 2022. Never mind the cost to the integrity of the election, in the eyes of the voters, who will know that Kent County had to scramble at the last minute to purchase and prepare all new voting machines. This expensive, dangerous, and arbitrary fishing expedition must stop here and, therefore, Clerk Lyons requests that this Court grant her motion to quash and impose the sanctions provided by Federal Rule of Civil Procedure 45.

## STATEMENT OF FACTS

**The 2020 election in Kent County**

Kent County uses Dominion voting machines and software to conduct its elections. (**Exhibit A**, Declaration of Kent County Elections Director Gerrid Uzarski.) In November 2020, 363,695 registered voters in Kent County cast votes for Michigan's presidential electors. (*Id.* at ¶ 9; *see also* **Exhibit B**, www.accesskent.com, accessed September 26, 2022.) Kent County voters favored now-President Joseph Biden over Donald Trump by more than 5%. (Ex. A, ¶ 9.) After the ballots were cast, the Kent County votes were canvassed to certify the results. (*Id.* at ¶ 10.) In December 2020, the Bureau of Elections conducted a hand audit of election results from various precincts. (*Id.*) Neither the canvas nor the audit identified any issues with fraud. (*Id.*)

After the election, Trump and his surrogates alleged that Michigan's presidential electors only voted for President Biden because of widespread voting fraud (even though Trump lost Michigan by more than 154,000 votes). Various governmental agencies investigated these claims and concluded that they lacked any merit whatsoever. Indeed, the Michigan Senate's Oversight Committee, controlled by Republican senators, conducted a thorough-going investigation of allegations of election fraud in Michigan and "found no evidence of widespread or systematic fraud in Michigan's prosecution of the 2020 election." (**Exhibit C**, The Report on the November

2020 Election in Michigan.) The Department of Justice came to the same conclusion. (**Exhibit D**, www.apnews.com, accessed September 26, 2022.)

**Lindell subpoenas the Kent County Clerk**

In February 2021, Dominion sued Lindell claiming that following the November 2020 election, Lindell made public statements that Dominion had "rigged the election" and "used algorithms to manipulate vote counts." *U.S. Dominion, Inc. et al. v. MyPillow, Inc. et al.,* No. 1:21-cv-00445 (D.D.C.), ECF No. 1, Dominion's Complaint and Demand and Jury Trial. Dominion alleged that these statements were defamatory and "constitute[d] deceptive trade practices" because they "disparage[d] Dominion's goods and services by false and misleading representations of fact." *Id.* at ¶¶ 170, 174.

On September 6, 2022, Lindell issued a subpoena to Clerk Lyons[1] demanding that she produce to him every conceivable record related to the 2020 election. Lindell has been entitled to pursue discovery in the underlying litigation since at least March 1, 2022. (**Exhibit E**, Dominion Litigation Scheduling Order.) He nonetheless waited until days before the Clerk was free to discard the 2020 election data under 52 U.S.C. § 20701 to issue his subpoena. And with the subpoena, Lindell sent correspondence purporting to impose a duty upon the Clerk to retain the 2020 election data beyond the statutorily required 22 months because his unidentified clients might want to pursue unidentified claims against unidentified defendants in Michigan.

To be specific, Lindell's subpoena requires the Clerk to produce the following:

1. Forensic images, in EnCase format, of each of the following objects used in connection with the November 2020 Election:

    a. All drives attached to or affiliated with an EMS Server

---

[1] Lindell also issued the same subpoena to the county clerks of the following Michigan counties: Berrien, Calhoun, Saginaw, and Wayne.

    b. All drives attached to or affiliated with any workstation used as an EMS Client

    c. All drives attached to or affiliated with any ImageCast Central Workstations

    d. All drives attached to or affiliated with any Adjudication Workstations

    e. All drives attached to or affiliated with the controlling computer for any ballot scanner such as a HiPro, Canon, etc

    f. All drives attached to or affiliated with any device used in conjunction with the election as a communications server or virtual private network server/concentrator

    g. All SD Cards, USB Drives or other storage devices that were inserted into or removed from all tabulators, ballot marking devices or other device that was used for the tabulation of votes

    h. All ImageCast X, ImageCast Precinct, and ImageCast Evolution devices

2. The following electronic files:

    a. Forensic copies of all slog.txt files and .dvd files generated from tabulators and ballot marking devices

    b. Forensic copies of all data items related to the November 2020 Election subject to the 22 month voter records retention requirement under U.S. federal law

3. The following information related to electronic election system architecture:

    a. A network diagram including all devices, mac addresses and assigned IP addresses for Your complete electronic election system, including but not limited to the EMS Server, all networked devices on the EMS Server network (routers, switches, communications servers, modems, etc), and all devices attached to the resident network for the voter registration server

    b. For each ballot marking device, ballot scanner, and tabulator, the media access control (MAC) address for each communication device connected to the ballot marking device, ballot scanner, or tabulator at any time between January 1, 2019 and November 30, 2020

    c. Copies of all network logs, PCAPs, netflow data and access control logs from networking devices associated with the EMS

    d. Credentials to permit access through all whole disk or file encryption technologies utilized in any part of Your electronic election system that is

       produced in response to this subpoena, including but not limited to BitLocker, TrueCrypt, VeraCrypt technologies

      e. A list of all personnel who had access to the EMS Server or any EMS server-connected computing device for the period January 1, 2019 through November 30, 2020. Provide the name of the person, the account utilized, the devices accessed and the duration of the access.

4. The following information related to the results of the November 2020 Election:

      a. Copies of all tabulator poll closing reports and tabulator reports generated by each precinct and polling location, detailing with date and time the number of in person voters, the number of same day voter registrations (if applicable), and the final totals for the precinct

      b. Copies of the certified final election results that were used to determine the official outcomes of the election contests

      c. Copies of any document, report, or spreadsheet that was produced in relation to the November 2020 Election

5. All documents related to any indication of any intrusion attempt into Your electronic election system.

6. Copies of all cellular bills and connections supporting Your ballot scanners and ballot marking devices. These records should include the International Mobile Equipment Identity (IEMI) number, Temporary Mobile Subscriber Identity (TMSI) number, originating phone number, destination phone number, date and time of call origination, and call duration.

7. Copies of all contracts and agreements with the suppliers of any of Your electronic election system equipment, devices, software, or support services.

8. Copies of all contracts and agreements related to network security, network monitoring, or cybersecurity concerning all or any part of Your electronic system.

(**Exhibit F**, Lindell's Subpoena.)

Providing forensic copies of the data on Kent County's election server and the various computers and other devices that are used to conduct elections will provide Lindell with the security protocols, safeguards, digital keys, and passwords to the County's election system. (*See* Ex. A, ¶ 6.) Further, the requirement to provide MAC addresses and IP addresses will allow

6

Lindell to identify and pinpoint the Kent County election server and its component parts' connections to the internet, and the requirement to provide passwords to decrypt encrypted files will allow Lindell and anyone with whom he shares the information to access the most sensitive aspects of Kent County's election system.[2]

A person with access to the information demanded by Lindell would have ability to tamper with Kent County's elections. (*Id.*) It appears that Lindell wants the information necessary to hack into Kent County's election server in the manner that he speculates—without evidence—occurred in 2020. If the Clerk is required to provide this information to Lindell, Kent County and its taxpayers will incur the expense of replacing the county-wide election system to ensure that Lindell and his fellow purveyors of election-fraud lies cannot tamper with future election results. The expense of doing so will exceed $4 million.

The replacement of any compromised election equipment is necessitated by security concerns and the risk of further undermining the confidence of voters in the election system. In part because of Lindell and his fellow falsehood peddlers, voters' confidence in the election process is significantly reduced. Where voters are not confident that elections are fair, they are less likely to vote. All of this serves to undermine the foundations of our republican way of government. The Clerk believes that providing Lindell with the keys to its election servers is going to cause voters from both major political parties and no political affiliation to lose additional confidence in the system. But replacing the election equipment six weeks before the 2022 general election is impossible.

---

[2] Production pursuant to a protective order is not an acceptable alternative. The Antrim County election litigation resulted in Antrim County and its clerk producing various data pursuant to a protective order. That information nonetheless surfaced with various election-denier groups throughout the country which were not authorized to receive the information under the protective order. (*See* **Exhibit G**, www.washingtonpost.com, accessed September 26, 2022.) The Clerk has no confidence that Lindell will honor a protective order, and almost no ability to verify compliance.

**Lindell refuses to discuss the subpoena with the Clerk's counsel**

Upon receiving Lindell's subpoena, the Clerk's counsel promptly contacted Lindell's counsel asking them to explain how Kent County's confidential election information is relevant to the Dominion litigation and to identify the efforts they took to reduce the burden of this production on Clerk Lyons. (**Exhibit H**, Clerk Lyons' First Letter). The letter requested a response by September 13, but Lindell's counsel did not reply. Thereafter, on September 16, Clerk Lyons' counsel sent a second letter stating that Lindell's lack of response confirmed that the subpoena was unduly burdensome and asking that they withdraw it by September 19. (**Exhibit I**, Clerk Lyons' Second Letter). The cover email further noted that if the subpoena was not withdrawn, the Clerk would move to quash and asked Lindell's counsel to meet and confer as required by this Court's local rule.

On September 21, Lindell's counsel sent the Clerk's counsel an apparent form letter that referenced the Clerk's "objections" (the Clerk has not sent any). Lindell's counsel promised not to enforce the subpoena by the purported return date. But Lindell's counsel did not respond to any of the requests identified by the Clerk in her counsel's correspondence, did not withdraw the subpoena, and did not engage in the meet-and-confer process. (*See* **Exhibit J**, Lindell's Counsel's Letter).

## ARGUMENT

**I.    Lindell's subpoena imposes an undue burden on the integrity of the election process and Kent County.**

Federal Rule of Civil Procedure 45(d)(3) provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." Few subpoenas impose a more significant burden than Lindell wants to

8

impose on the Kent County Clerk, for no apparent purpose other than to harass her and perpetuate already disproven election-fraud theories.

Typically, courts apply the following factors to determine if an undue burden exists: "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *New Products Corp. v. Dickinson Wright, PLLC (In re: Modern Plastics Corp.)*, 890 F3d 244, 251 (6th Cir. 2018). Further, the status of the subpoena-recipient as a non-party is also a factor. *Id.* Indeed, Rule 45 imposes an obligation on a party and counsel serving a subpoena on a non-party to "avoid imposing undue burden or expense on a person subject to the subpoena," and that the district court for the district where compliance is required "must enforce this duty." Fed. R. Civ. P. 45(d)(1).

Here, the burden imposed by the subpoena is extreme. Simply put, Lindell's subpoena threatens the Clerk's ability to ensure a fair and accurate election on November 8, 2022, and puts at risk the confidence that Kent County voters have in the election process.

The November 8, 2022 general election is just weeks away. While most Clerks are finalizing training and finishing equipment checks, Kent County is spending its time responding to this subpoena. If Kent County produced the information sought by Lindell, then the server it uses to conduct its elections would need to be recertified. (Ex. A, ¶ 5.) This process would take months and impose a considerable expense. (*Id.*) It would not be done in time for November 8, 2022. (*Id.*)

Additionally, the subpoena would require Kent County to set aside all voting machines it used in 2020 and replace this equipment. The cost for the new equipment would be over $4.2 million—a cost that would be shouldered by the taxpayers. (*Id.* at ¶ 7.) This does not include the

cost of installation, training, and other incidental costs associated with replacing Kent County's entire voting apparatus. (*See id*.) Practically speaking, with the general election a little over a month away, it would be impossible to acquire and install a new election system and train election workers by the election date. (*Id*.)

Even if Kent County could replace its voting equipment in time, producing the information sought by Lindell and rushing to purchase new voting machines would come at a price much steeper than $4.2 million—it would likely cost the faith Kent County residents have in the integrity of its election system. Lindell's subpoena requests that Clerk Lyons produce all the forensic evidence, copies of election results, and personnel information related to the November 2020 election. This would include providing, amongst other information, Kent County's passcodes and keys, cellphone bills, and Dominion's software. This proprietary information is crucial to the conduction of Kent County's elections. The information sought would allow Lindell, and anyone with whom he shared the information, a playbook for hacking into Kent County's Dominion-software based system, and Kent County would need to obtain a new system. (*Id.* at ¶¶ 5, 7-8.) If this information falls into the wrong hands, it is possible that someone could use the information to try to disrupt the security of the next election's votes. Providing this information to a third-party—and one who continues to espouse universally[3] debunked conspiracy theories about election fraud—runs the significant risk of causing Kent County voters to question the integrity of the election process.

This one factor alone provides a more-than-sufficient basis to quash Lindell's subpoena. Consideration of the other factors adds little. Lindell has declined to explain to the Clerk how

---

[3] Every investigative agency who has reviewed Lindell's claims have concluded there is no evidence to support it. There is no evidence of wide-spread election fraud related to the 2020 election.

Kent County's information is relevant to the Dominion litigation. Second, the requests are insufficiently detailed such that Kent County could not determine which documents it was even requesting. For example, the subpoena calls for Kent County to produce "[c]opies of any document, report, or spreadsheet that was produced in relation to the November 2020 Election." (Ex F.) As written, this would require the collection, review, and production of any email, memo, spreadsheet, note, or other document regarding the 2020 election. Regardless of whether it relates to the voting equipment, or unrelated issues such as local elections, campaign finance inquiries, or other irrelevant topics.[4]

The breadth of Lindell's subpoena demonstrates that he and his counsel undertook no effort to minimize the burden of production on the Clerk. Indeed, it seems that they are seeking information regarding Dominion's software that is available from Dominion in the underlying litigation. Nor is it evident from the record in the underlying case why Kent County should be subject to Lindell's demands. And again, when the Clerk's counsel reached out to the issuing attorney, it received no response except for an inapplicable form letter.

For all these reasons, Lindell's subpoena should be quashed.

## II. Lindell and his counsel should be required to pay the Clerk's costs and attorney fees in bringing this motion.

The Federal Rules of Civil Procedure provide for sanctions on subpoena-issuing parties and their counsel. This is a case that calls for the imposition of sanctions not just to reimburse the Kent County taxpayers for the expenses incurred in responding to this baseless subpoena, but to

---

[4] Further, Lindell's subpoena defines "forensic image" as "a bit-by-bit, sector-by-sector direct copy of a physical storage devices containing electronic data, including all files, folders and unallocated, free, and slack space." (Ex. F.) This definition and use of the term in the subpoena are both vague and ambiguous such that it cannot be ascertained what specific documents Lindell demands be produced. Rather, it seems that Lindell wants an exact reproduction of a thing—a server—which is not contemplated by Rule 45.

discourage Lindell and his counsel from issuing additional, similar subpoenas to other counties in this District and across the country.

Rule 45(d)(1) requires that an issuing party take "reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." If the party fails to do so, a court "must inforce this duty and impose an appropriate sanction—which may include lost earning and reasonable attorney's fees." *Id.* Courts within the Sixth Circuit have clarified that an issuing party has taken "reasonable steps" when they "engage[d] in good faith negotiations to resolve conflicts over subpoenas and to avoid imposing undue burdens" and no other "aggravating factors" exist. *In re Subpoena Duces Tecum to Tammy Risner*, 338 F.R.D. 380, 383 (S.D. Ohio 2021). Using a subpoena to harass an entity is an aggravating factor. *See id.* at 383–84.

Here, Lindell has taken no reasonable steps to avoid imposing an undue burden on Clerk Lyons. After receiving Lindell's subpoena, Clerk Lyons' counsel sent two letters to Lindell's counsel to discuss the burden the subpoena imposed and the relevance of the information requested. (Ex. H; *see also* Ex. I.) Despite Clerk Lyons' counsel making every attempt to resolve this conflict in a professional manner, Lindell has not addressed these issues. Instead, their only response was an ambiguous letter sent at the eleventh hour wherein they did not withdraw their subpoena. (Ex. J.)

As noted above, there was no widespread voter fraud in Kent County in the 2020 Presidential election. (Ex. A at ¶ 10.) This same conclusion has been reached by every investigatory agency who has reviewed the data—including the Trump Department of Justice. (Ex D.) Clerk Lyons publicly confirmed her faith in the election results and these investigatory findings after the 2020 election. (**Exhibit K**, www.detroitnews.com, accessed September 26, 2022) (*see also* **Exhibit L**, www.wzzm13.com, accessed September 26, 2022.)

Additionally, federal courts have come to the same conclusion. For example, in *King v. Whitmer*, the Eastern District of Michigan rejected plaintiffs' attempts to have Michigan's election results decertified finding that it was "nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden." 505 F. Supp. 3d 720, 737–38 (E.D. Mich. 2020); *see also Bowyer v. Ducey*, 506 F. Supp. 3d 699, 721 (D. Ariz. 2020) (concluding allegations of manipulation of the 2020 Presidential Election results were "sorely wanting of relevant or reliable evidence" and dismissing the case.)

Simply put, Lindell's conspiracy theory is baseless. He and his counsel have no evidence to suggest that the mountain of information it has demanded Kent County turn over will support the falsehoods that he peddles with his pillows. At this point, the subpoena is nothing more or less than harassment of the Clerk, quite possibly because she has spoken out regarding the integrity of Michigan's elections.

Lindell and his counsel have sought to impose an immediate duty to hold and later produce voluminous sensitive documents without any explanation as to why the Clerk, Kent County, and its taxpayers should bear the high burden and significant expense of doing so. Indeed, Lindell's other activities suggest that this is part of a coordinated strategy to perpetuate election-fraud theories that have already been debunked by numerous governmental agencies. When the Clerk's counsel requested specific follow up on Lindell's subpoena, his counsel did not respond except with a form letter saying that counsel would respond in a few weeks. (*See* Ex. J.) The Clerk and Kent County should not be required to await counsel's attention—he chose to issue a subpoena in this district, and he should be required to take his obligations under Rule 45 seriously.

13

This is not unusual behavior for Lindell. In August 2022, he encouraged attendees at a rally to request November 2020 cast voting records "from every election office in the country." (*See* **Exhibit M**, www.washingtonpost.com, accessed September 22, 2022). Lindell's podcast, the Lindell Report, also published an article that requested that individuals submit Freedom of Information Act requests for all communications between their state's Secretary of State Office and representatives of Dominion that included the terms "cast vote record" or "Mike Lindell." (*See* **Exhibit N**, www.frankspeech.com, accessed September 22, 2022).

Lindell is misusing the privilege of issuing subpoenas to third parties to harass and unduly burden the Clerk. He has not responded to reasonable requests to discuss his subpoena but has attempted only to delay a resolution of the problems that his subpoena creates for the Clerk. Sanctions are required to deter Lindell and his counsel's abhorrent behavior.

## CONCLUSION

Based upon the foregoing, Clerk Lyons respectfully requests that this Court: (i) quash the subpoena directed to her; (ii) award Clerk Lyons sanctions from Lindell, MyPillow, and their counsel in the form of attorneys' fees needlessly incurred as a result of Lindell's frivolous subpoena; and (iii) award any other relief this Court deems just and appropriate under the circumstances.

Dated: October 4, 2022        /s/ Madelaine Lane
                              Matthew T. Nelson (P64768)
                              Madelaine Lane (P71294)
                              Tessa G. Mallett (P85617)
                              WARNER NORCROSS + JUDD LLP
                              150 Ottawa Avenue NW, Suite 1500
                              Grand Rapids, MI 49503
                              616.752.2000
                              mlane@wnj.com

                              Attorney for non-party Kent County